UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Kay Sieverding</u>

    v.                                Case No. 22-cv-198-SE
                                       Opinion No. 2023 DNH 087
<u>United States of America</u>
<u>and United States Department</u>
<u>of Justice</u>

**O R D E R**

Kay Sieverding, proceeding pro se, brings claims against the United States and the Department of Justice under the Freedom of Information Act ("FOIA"), the Privacy Act, and the Federal Tort Claims Act. Sieverding's claims arise from the circumstances of her arrests and detentions between 2005 and 2007 and her subsequent efforts to challenge the government's records relating to those arrests and detentions. Sieverding's amended complaint (doc. no. 4) alleges 11 claims against the defendants. The court dismissed Claim 1 on November 2, 2022.

The defendants moved to dismiss Claims 3 through 11 on several grounds, including res judicata and failure to state a claim on which relief may be granted (doc. no. 11).[1] Sieverding objected to the motion (doc no. 30) and moved for summary judgment on Claim 10 (doc. no. 45). At Sieverding's request, the

---

[1] The defendants did not move to dismiss Claim 2, which alleges that the DOJ has not responded properly to Sieverding's FOIA request.

court scheduled a video hearing on the defendants' motion to dismiss and her motion for summary judgment. Before the hearing, Sieverding voluntarily dismissed Claims 3, 4, 6, 7, 8, and 9, which leaves in this case only Claims 2, 5, 10, and 11. See doc. nos. 49 and 59.

The court held a video hearing on June 27 on the defendants' motion to dismiss and Sieverding's motion for summary judgment. Sieverding and counsel for the defendants appeared.

## Background

In light of Sieverding's voluntary dismissal of certain claims, the court need only address the defendants' motion to dismiss as it pertains to Claims 5, 10, and 11, as well as Sieverding's motion for summary judgment on Claim 10. The court therefore provides only the background relevant to those claims.

## I.   Litigation History[2]

Over the last two decades, Sieverding has brought dozens of lawsuits against several individuals and the DOJ. Her litigation history began in 2002 when she, her husband, and her two sons

---

[2] The facts in this section are drawn largely from Sieverding v. Colorado Bar Ass'n, 469 F.3d 1340 (10th Cir. 2006) and Sieverding v. Colorado Bar Ass'n, 244 F. App'x 200 (10th Cir. 2007).

filed a complaint in the district court for the District of Colorado alleging violations of their rights with regard to zoning decisions that affected them and their former neighbors ("Sieverding I"). At the conclusion of that case in March 2004, the district court issued a filing restriction against the Sieverdings, enjoining them from filing lawsuits related to that subject matter in the District of Colorado or any other court ("2004 filing restriction").

Sieverding and her husband did not comply with the 2004 filing restriction. Rather, in 2004 and 2005, they filed several civil actions relating to the subject matter of Sieverding I, including five in the federal district courts in Minnesota, Northern Illinois, and the District of Columbia, one in Colorado state court, and one appeal in the Eighth Circuit Court of Appeals. The defendants in Sieverding I filed in the District of Colorado a motion requesting a show cause order as to why the Sieverdings should not be sanctioned for violating the 2004 filing restriction.

In September 2005, the district court found the Sieverdings in contempt of court for violating the 2004 filing restriction and gave them the option to dismiss their remaining lawsuits or go to jail. Sieverding refused to dismiss the lawsuits and was remanded to custody. Her husband withdrew his name from the pending lawsuits and was not detained.

In January 2006, the Colorado district court held a show cause hearing and released Sieverding from custody with the condition that she dismiss all of her remaining lawsuits within a week. The court also issued an order broadening the filing restriction by enjoining Sieverding from filing any further lawsuits anywhere in the country — regardless of the subject matter — unless she was represented by a lawyer or unless the district court specifically approved her filing ("2006 filing restriction").

In September 2006, the defendants in Sieverding I filed a motion requesting a show cause order as to why Sieverding should not be sanctioned for violating the 2006 filing restriction. Specifically, the defendants argued that Sieverding had violated the 2006 filing restriction "by filing motions to reconsider in her federal cases pending in the D.C. Circuit and by filing an appeal to [the Tenth Circuit] from the dismissal of her District of Kansas case." Sieverding, 244 F. App'x at 204. During the hearing on the motion, the Colorado district court "implicitly" found Sieverding in contempt and instructed her court-appointed attorney that Sieverding had to dismiss all outstanding litigation against the defendants, or she would remain in contempt. Id.

Sieverding appealed the order imposing the 2006 filing restriction. The Tenth Circuit "affirm[ed] the district court's

order" but modified it "to prohibit the Sieverdings from commencing any pro se litigation in any federal district court within the Tenth Circuit against the persons, entities, counsel, and insurance companies of the parties involved in" Sieverding I. Sieverding, 469 F.3d at 1345. In other words, the Tenth Circuit left in place the filing restriction, but narrowed the scope.

In May 2007, Sieverding was arrested and taken into custody by the U.S. Marshals Service ("USMS") in connection with the September 2006 contempt finding. Sieverding's court-appointed attorney filed a motion in the Colorado district court to reconsider the civil contempt proceedings, requesting that the court vacate the show cause order and cancel the arrest warrant in light of the Tenth Circuit's modification of the 2006 filing restriction. The Colorado district court held a hearing on June 1 and granted Sieverding's motion to reconsider, vacated the order directing the USMS to take Sieverding into custody, and ordered the USMS to release her.

Since then, Sieverding has filed numerous suits against the DOJ arising out of the USMS's actions in connection with her arrests and detentions between 2005 and 2007. In addition, she has repeatedly sought to have the DOJ or the USMS issue public statements or create records indicating that her arrests and

detentions were invalid or unlawful. Two of those attempts have
led to claims in this case and are discussed below.


II.  <u>2012 Internal USMS Email</u>

On June 15, 2012, Sieverding spoke via telephone to a
Senior Inspector at the USMS regarding her arrests and
detentions. That same day, the Senior Inspector wrote an email
to another member of the USMS recounting that phone call. The
email stated:

> On June 15, 2O12 @ 11:20 am, I spoke with Ms. Kay
> Sieverding . . . from Colorado. She wants a public
> apology from the USMS for falsely detaining her
> without proper documentation for 5 months. She was
> detain [sic] in 2005, 2006 and 2007, for prostitution.
> She has filed the same compliant [sic] with IA 3 times
> and the last complaint was December 2011. Ms.
> Sieverding will be submitting her statement by fax to
> our office.

Doc. no. 45-1 ("2012 email"). Sieverding, who the defendants
concede was never detained for prostitution, tried
unsuccessfully for several years to get the DOJ to "amend its
record that the plaintiff was arrested for prostitution." Doc.
no. 4, ¶ 97. The DOJ denied her requests.


III. <u>2021 Letter to Senator Shaheen</u>

On March 24, 2021, Norman Wong, an employee of the
Executive Office of the United States Attorneys ("EOUSA"), sent

a letter to Senator Jeanne Shaheen regarding Sieverding ("2021 letter"). See doc. no. 25-4. The 2021 letter states:

> Dear Senator Shaheen:
>
> This responds to your letter to the Department of Justice (Department) dated January 25, 2021, on behalf of your constituent, Kay Sieverding, who is requesting that the Department issue a statement that she was never "arrested on a federal warrant."
>
> In the case of Sieverding, et al. v. Colorado Bar Ass'n, et al., Case No. 02-cv-1950 (D. Colo.), United States District Court Judge Edward Nottingham ordered Ms. Sieverding remanded to the custody of the United States Marshal in connection with a federal civil contempt finding. As a matter of public record, a search of federal court filings in the United States District Court for District of Colorado does not show any federal criminal charges filed against Ms. Sieverding.
>
> We hope this information is helpful. Please do not hesitate to contact the Office of Legislative Affairs if we may provide additional assistance regarding this or any other matter.

Id.

Sieverding requested that the EOUSA amend the 2021 letter "to state that her arrests and detentions were illegal because they were not pursuant to a federal statute and therefore violated the NonDetention [sic] Act, 18 U.S.C. § 4001." Doc. no. 4, ¶ 104. The EOUSA denied her request and her appeal was unsuccessful.

## Discussion

Relevant to this order, the defendants move to dismiss

7

three of Sieverding's claims arising out of her arrests and
detentions and her subsequent efforts to challenge the
government's records relating to those arrests and detentions.
In Claim 5, Sieverding seeks to hold the DOJ liable for
malicious prosecution, based largely on the USMS's actions in
remanding her to custody in connection with the Colorado
district court's contempt findings. In Claims 10 and 11, she
asserts claims under the Privacy Act, and seeks to have the DOJ
create records amending the 2012 email and the 2021 letter.

The defendants move to dismiss Claim 5 on res judicata
grounds. They move to dismiss Claims 10 and 11 for failure to
state a claim for relief. Sieverding moves for summary judgment
on Claim 10.


I.   Malicious Prosecution (Claim 5)

In Claim 5, Sieverding alleges that two attorneys for the
defendants in Sieverding I, Christopher Beall and David
Brougham, prosecuted her for contempt of court "without probable
cause to believe that she violated a United States statute."[3]
Doc. no. 4, ¶ 39. Beall and Brougham, however, are not
defendants in this case. Instead, Sieverding alleges that the

---

[3] Neither the amended complaint nor Sieverding's objection
to the defendants' motion to dismiss states on which contempt
prosecution Claim 5 is based.

USMS is liable for malicious prosecution because it "ratified" the prosecution. These acts of ratification included remanding her to custody and informing a newspaper that Sieverding was arrested on a federal warrant. The defendants move to dismiss Claim 5 on several grounds, including that the claim is barred by the doctrine of res judicata.

"Under federal law, 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). "Thus, the elements of a res judicata defense are (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions." Id. To determine whether two causes of action are sufficiently identical, the First Circuit employs a "transactional analysis" that looks to whether the causes of action "derive from a common nucleus of operative facts." Haag v. United States, 589 F.3d 43, 46 (1st Cir. 2009) (quotation omitted).

Sieverding's malicious prosecution claim meets each element of res judicata. Indeed, Sieverding has brought multiple claims over many years against the DOJ arising out of her arrests and

detentions for failing to comply with the filing restrictions. These claims have all been dismissed either on the merits or, in recent years, on the basis of res judicata. See Sieverding v. U.S. Dep't of Just., 693 F. Supp. 2d 93, 109 (D.D.C. 2010) (dismissing on the merits various claims against the DOJ arising out of the USMS's actions in connection with Sieverding's detentions), aff'd, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013); Sieverding v. U.S. Dep't of Just., 847 F. Supp. 2d 75, 82, 86-87 (D.D.C. 2012) (dismissing claims alleging that Sieverding "was improperly arrested and incarcerated by the USMS for civil contempt" because "[i]nsofar as they are not barred [by res judicata], they remain non-meritorious"), aff'd, No. 13-5060, 2013 WL 6801184 (D.C. Cir. Dec. 11, 2013); Sieverding v. U.S. Dep't of Just., No. 1:17-cv-11036-PBS., Docket Nos. 56, 90, 91 (D. Mass. June 6, 2017) (dismissing several claims that "primarily complain[] of the alleged illegality of [Sieverding's] arrests" on res judicata grounds); Sieverding v. Dep't of Just., No. CV 18-10916-FDS, 2018 WL 4963177, at *2 (D. Mass. Oct. 15, 2018) (dismissing on res judicata grounds claim for malicious prosecution based on the USMS remanding Sieverding to custody).

For the same reasons given by the several courts that have dismissed Sieverding's claims against the USMS arising out of her arrests and detentions in Colorado, the court concludes that

Sieverding's malicious prosecution claim is barred by the
doctrine of res judicata. For the sake of clarity and in light
of Sieverding's pro se status, however, the court addresses the
arguments Sieverding made regarding this claim at the video
hearing. She contended that the most recent order from the
District of Massachusetts determining that her malicious
prosecution claim was barred by res judicata, Sieverding, 2018
WL 4963177, was not a "final order" entitled to preclusive
effect. Although she admits she did not appeal that order to the
First Circuit, she claimed that she had amended her complaint
prior to the court issuing the order and, therefore, it was
invalid.

There are several problems with Sieverding's argument.
First, to the extent that she intended to raise an argument as
to the validity of the district court's order, she was required
to appeal the order to the First Circuit on that ground. She did
not. Therefore, she has waived her right to challenge the
validity of that order. Second, "'the res judicata consequences
of a final, unappealed judgment on the merits are not altered by
the fact that the judgment may have been wrong . . . .'" Piazza
v. Aponte Roque, 909 F.2d 35, 38 (1st Cir. 1990) (quoting
Federated Dep't Stores, Inc., 452 U.S. 394, 398 (1981)
(alterations omitted)). Finally, regardless of the effect of
that one order, Sieverding's malicious prosecution claim would

be barred by res judicata because of the several other court orders referenced above that have found similar or identical claims non-meritorious or otherwise barred.

Claim 5 is barred by the doctrine of res judicata. Therefore, the court grants the defendants' motion to dismiss as to that claim.


II.  Privacy Act (Claim 10)

In Claim 10, Sieverding alleges that the refusal to correct the 2012 email stating that she had been arrested for prostitution is a violation of the Privacy Act. She seeks an order requiring the DOJ to create a record stating that she was not arrested for prostitution.

At the June 27 video hearing, the defendants stated on the record that Sieverding had never been arrested for prostitution and agreed to notify the court within 14 days whether they would voluntarily provide Sieverding with a letter regarding her arrest history. The following day, they filed with the court a letter from Kathleene Molen, the Associate General Counsel of the USMS. Doc. no. 63-1. The letter states that Molen reviewed a USMS subject report on Sieverding, which shows an individual's felony history and warrant information, and it "does not contain any arrests for prostitution." Id.

In response, Sieverding submitted two filings. The first requested that the DOJ rewrite Molen's letter, because it "implies that the USMS might have records that [she] was charged with a felony like securities fraud." Doc. no. 64. She requested that the DOJ rewrite the letter to state: "A DOJ email mistakenly identified Kay Sieverding as having been arrested for prostitution. The Department of Justice has no information that she was ever arrested for prostitution or any other crime." Id.

The second filing accused the DOJ of acting in bad faith by not conferring with her before filing the letter with the court. She requests that the DOJ "refer the writing of the letter to the Office of Public Affairs and [she] should have input into the document." Doc. no. 65 at 1-2.

Putting aside that courts have consistently held that email archives are not a "system of records" under the Privacy Act and, therefore, the defendants were under no obligation to amend the 2012 email, see, e.g., Gordon v. Courter, 118 F. Supp. 3d 276, 291 (D.D.C. 2015), Sieverding's Privacy Act claim in Claim 10 is now moot. Her amended complaint "requests this court order the DOJ issue a disclosable record stating that she was not arrested 'for prostitution.'" Doc. no. 4, ¶ 102. She now has a statement from the defendants on the record that she was never arrested for prostitution, and a letter from the USMS stating

that its records "do not contain any arrests for prostitution."
Doc. no. 63-1.

Thus, Sieverding has been provided with the exact relief
she seeks in her amended complaint. Her suggestion that the
letter is insufficient because it does not contain her input or
address arrests beyond prostitution is without merit. Claim 10
is dismissed as moot.

III. <u>Privacy Act (Claim 11)</u>

Sieverding's Privacy Act Claim in Claim 11 arises from the
2021 letter to Senator Shaheen. Specifically, she takes issue
with the statement in the letter that "United States District
Court Judge Edward Nottingham ordered Ms. Sieverding remanded to
the custody of the United States Marshal in connection with a
federal civil contempt finding." Doc. no. 25-4. Sieverding
requests that the DOJ state that her "arrests and detentions
were illegal because they were not pursuant to a federal statute
and therefore violated the NonDetention [sic] Act, 18 U.S.C. §
4001." Doc. no. 4, ¶ 104.

At the June 27 hearing, Sieverding could not identify any
portion of the 2021 letter that was inaccurate. That is not
surprising because the 2021 letter correctly describes the
facts. Judge Nottingham of the District of Colorado did order

Sieverding remanded to the custody of the USMS in connection
with a federal civil contempt finding.

Thus, Sieverding seeks to correct a letter that accurately
describes events. For that reason, she fails to state a viable
claim for relief under the Privacy Act.

Again, for the sake of clarity and in light of Sieverding's
pro se status, the court addresses the arguments Sieverding
raised at the June 27 hearing. At bottom, Sieverding stated that
she seeks to have this court declare her arrests and detentions
between 2005 and 2007 unlawful. As the court explained,
Sieverding cannot challenge the validity of those arrests and
detentions in this court. See Celotex Corp. v. Edwards, 514 U.S.
300, 313 (1995). Even if she could, as discussed above,
Sieverding has brought claims challenging her arrests and
detentions for well over a decade, and courts have addressed
those claims. Therefore, collateral estoppel would bar
Sieverding from re-litigating those issues here. Vargas-Colon v.
Fundacion Damas, Inc., 864 F.3d 14, 25 (1st Cir. 2017) ("Issue
preclusion, sometimes referred to as collateral estoppel, bars
parties from re-litigating issues of either fact or law that
were adjudicated in an earlier proceeding." (quotation
omitted)).

Conclusion

For the foregoing reasons, the defendants' motion to dismiss (doc. no. 11) is granted as to Claims 5 and 11. The court dismisses Claim 10 as moot and so denies as moot the defendants' motion to dismiss as it pertains to that claim and denies as moot Sieverding's motion for summary judgment on that claim (doc. no. 45).

The only claim remaining in this case is Claim 2. The defendants shall file a responsive pleading to Claim 2 within 14 days of the date of this order. The filing restrictions the court imposed in its May 2, 2023 order are lifted.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

July 19, 2023

cc:  Kay Sieverding, I, pro se
     Counsel of Record