UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Kay Sieverding

       v.

Case No. 22-cv-198-SE
Opinion No. 2024 DNH 046

United States of America
and United States Department
of Justice

# O R D E R

From 2005 to 2007, Kay Sieverding was arrested and detained multiple times for failing to comply with filing restrictions imposed on her by the district court for the District of Colorado. Believing that her arrests and detentions were unlawful, Sieverding has brought dozens of lawsuits over the last two decades against several defendants, alleging a range of claims arising from the circumstances of those arrests and detentions, as well as her subsequent efforts to challenge the government's records relating to those incidents. This case is one of those many lawsuits.

Out of the 11 claims Sieverding alleged against the two defendants in this case, the United States of America and the Department of Justice, only one remains: a claim that the DOJ violated the Freedom of Information Act ("FOIA") when it withheld seven pages in response to one of Sieverding's many requests pursuant to the statute. The defendants now move for summary judgment on that claim. Sieverding objects.

Sieverding also moves for leave to amend her complaint. In her proposed amended complaint, Sieverding asserts claims based on the same theories and arising out of the same circumstances as claims which this court and others have rejected numerous times. Neither the claims Sieverding asserts in her proposed amended complaint nor her remaining claim in the

operative complaint are viable. Therefore, the court denies Sieverding's motion for leave to amend, grants the defendants' motion for summary judgment, and denies any other pending motion as moot.

I.      Motion to Amend

Sieverding submitted several filings related to her motion to amend her complaint. Before ruling on Sieverding's motion, it is necessary for the court to clarify the exact relief she requests.

Sieverding's motion to amend her complaint (doc. no. 92) includes a proposed second amended complaint (doc. no. 92-1).[1] The proposed second amended complaint, which she referred to as "Proposed Complaint 3.0," is 58 pages long, contains 278 numbered paragraphs, and alleges six claims, including two FOIA claims. The defendants objected to Sieverding's motion on several grounds, including that her Proposed Complaint 3.0 fails to comply with Federal Rule of Civil Procedure 8(a)(2)'s requirement that a complaint consist of a "short and plain statement" showing entitlement to relief. Doc. no. 93-1 at 3-4.

In response, Sieverding filed a reply including a new version of her proposed complaint, which she referred to in her reply as "Proposed Complaint 3.1." See doc. no. 99-1. Sieverding asserted in the reply that she shortened her proposed complaint to address the defendants' concerns about the length of the Proposed Complaint 3.0. Doc. no. 99 at 1. Sieverding also filed a "motion to dismiss" her FOIA claims, explaining that she removed her FOIA claims from the Proposed Complaint 3.1 in an effort to shorten it. See doc. no. 100 at 1 ("The DOJ claimed that the 58 page proposed complaint was defective because it was too long and wordy. The plaintiff

---

[1] Sieverding filed her first amended complaint, which is the operative complaint in this case, on July 21, 2022. See doc. no. 4.

wrote a new proposed complaint that is only 30 pages. In order to shorten her proposed complaint, she sacrificed all her FOIA claims.").

The court construes Sieverding's motion to dismiss her FOIA claims (doc. no. 100) as an addendum to her motion for leave to file an amended complaint. The court also construes Sieverding's "Proposed Complaint 3.1" (doc. no. 99-1) as her proposed amended complaint. With that framework, the court now turns to Sieverding's motion for leave to amend her complaint.[2]

A.    Standard of Review

Federal Rule of Civil Procedure 15(a) provides that a party may, in certain circumstances, amend a pleading without leave of a court. In all other cases, however, a party may only amend its pleadings with the opposing party's written consent or the court's leave. Fed. R. Civ. P. 15(a)(2).

Though courts "should freely give leave when justice so requires," id., they may deny amendments for several reasons, including "undue delay, bad faith, dilatory motive of the requesting party, repeated failure to cure deficiencies, and futility of amendment," U.S. ex rel. Rost v. Pfizer, Inc., 507 F.3d 720, 733-34 (1st Cir. 2007) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). In determining whether to grant a motion to amend, the court must examine the

---

[2] Sieverding filed the Proposed Complaint 3.1 after the defendants filed their objection to her motion for leave to amend. Thus, the defendants' objection addresses the claims in the Proposed Complaint 3.0, doc. no. 92-1, rather than in the Proposed Complaint 3.1. Nevertheless, the defendants' arguments in their objection are largely applicable to the Proposed Complaint 3.1. Therefore, the court addresses Sieverding's motion without affording the defendants an opportunity to file a supplemental objection.

totality of the circumstances and "exercise its informed discretion in constructing a balance of pertinent considerations." Palmer v. Champion Mortg., 465 F.3d 24, 30–31 (1st Cir. 2006).

       B.    <u>Background</u>

The court's order granting in part the defendants' motion to dismiss contains a detailed background of Sieverding's litigation history. <u>See</u> Sieverding v. United States, No. 22-cv-198-SE, 2023 WL 4627650 (D.N.H. July 19, 2023). For context, the court summarizes the relevant facts briefly here.

Sieverding's litigation history began in 2002 when she, her husband, and her two sons filed a complaint in the district court for the District of Colorado alleging violations of their rights with regard to zoning decisions that affected them and their former neighbors. At the conclusion of that case in March 2004, the district court issued a filing restriction against the Sieverdings, enjoining them from filing lawsuits related to that subject matter in the District of Colorado or any other court.

When Sieverding did not comply with the filing restriction, the Colorado district court found her in contempt of court and ordered her detained. Sieverding was eventually released from custody and the district court issued an order broadening the filing restriction to enjoin Sieverding from filing any further lawsuits anywhere in the country — regardless of the subject matter — unless she was represented by a lawyer or unless the district court specifically approved her filing. The district court subsequently found Sieverding in contempt of the revised filing restriction. Consequently, the U.S. Marshals Service ("USMS") arrested her and took her into custody.

Sieverding appealed the order imposing the revised filing restriction. The Tenth Circuit affirmed the district court's order but narrowed the scope of the filing restriction. In June 2007, the district court vacated the order directing the USMS to take Sieverding into custody in light of the Tenth Circuit's ruling and ordered the USMS to release her from custody.

Since then, Sieverding has filed numerous suits against the DOJ arising out of the USMS's actions in connection with her arrests and detentions between 2005 and 2007. In addition, she has repeatedly sought to have the DOJ or the USMS issue public statements or create records indicating that her arrests and detentions were invalid or unlawful.

In this case, Sieverding asserted 11 claims in her first amended complaint. After motion practice, the only claim remaining is Claim 2, which asserts that the defendants violated FOIA when the DOJ withheld seven pages in response to one of her several requests.[3] The defendants have moved for summary judgment on that claim.

Sieverding now moves for leave to file a second amended complaint. Her Proposed Complaint 3.1 asserts the following claims:

- Claim One: Violation of a DOJ regulation, 28 C.F.R. § 50.2, governing the DOJ's release of court information to the media, pertaining to the Chief Deputy Marshal for Colorado's "statement to the Denver Post newspaper in February 2006" regarding Sieverding's arrests and detentions. Doc. no. 99-1, ¶ 4. Sieverding requests that the court "create a remedy" for a violation of that regulation. Id., ¶ 19.

- Claim Two: Malicious Prosecution based on the USMS's actions relating to her arrests and detentions from 2005 through 2007.

---

[3] The defendants submitted evidence showing that Sieverding routinely submits more than 100 FOIA requests per year and is often responsible for more than four percent of yearly FOIA requests throughout the country.

- Claim Three: Violation of a Privacy Act requirement under 5 U.S.C. § 552a(e)(4) regarding publishing information on the Federal Register, pertaining to records relating to Sieverding's arrests and detentions.

- Claim Four: Violation of the Privacy Act, 5 U.S.C. § 552a(e)(10), which requires the DOJ to keep records secure and confidential.

The defendants object on several grounds, including that Sieverding engaged in undue delay in seeking to amend her complaint a second time and that the proposed amendment would be futile. The court agrees with both arguments and denies Sieverding's motion.

### C.    Undue Delay

When "considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has at the very least the burden of showing some valid reason for his neglect and delay." Perez v. Hosp. Damas, Inc., 769 F.3d 800, 802 (1st Cir. 2014) (quotation and alteration omitted). In assessing whether a movant has carried this burden, courts must take into account what "the plaintiff knew or should have known and what [s]he did or should have done." Leonard v. Parry, 219 F.3d 25, 30 (1st Cir. 2000). Undue delay, on its own, may be enough to justify denying a motion for leave to amend. Calderón–Serra v. Wilmington Trust Co., 715 F.3d 14, 20 (1st Cir. 2013).

Sieverding initiated this lawsuit on June 6, 2022, and filed her amended complaint on July 21, 2022. In November 2023, faced with the defendants' motion for summary judgment on her last remaining claim, Sieverding moved to amend her complaint again. Thus, a considerable amount of time has passed between Sieverding's initiation of this action and her motion for leave to file her second amended complaint. See In re Lombardo, 755 F.3d 1, 3 (1st Cir. 2014) (noting

that "periods of fourteen months, fifteen months, and seventeen months" between a plaintiff filing a complaint and seeking to amend constitute "considerable time warranting explanation" (citations and quotation omitted)). Therefore, the burden shifts to Sieverding to show a valid reason for her delay.

Sieverding's motion offers no justification for her delay. In the Proposed Complaint 3.1 itself, Sieverding attempts to suggest that she could not have brought some of her claims earlier. These allegations include that she only recently realized that she had a better argument to support one of her claims and that a 2022 Supreme Court case purportedly changed the standard for one of her claims. See doc. no. 99-1, ¶ 111 (stating that with regard to Claim 3, a "few months ago, the plaintiff searched CASETEXT.com for cases on equitable and judicial estoppel in connection to her malicious prosecution claim. Then she went to bed. She woke up at 4 AM with the realization that she can overcome the DOJ's res judicata defense using judicial estoppel because the relevant chapters of the Code of Federal Regulation and the System of Records Notices were written by the Department of Justice."); id., ¶ 21 (asserting that Thompson v. Clark, 142 S. Ct. 1332 (2022), "modified the standard for malicious prosecution claims" and that her claim "could not have been made before that decision").

These purported justifications do not excuse Sieverding's delay in seeking to amend her complaint for a second time. Sieverding fails to provide an explanation for her delay with respect to certain claims[4] and offers disingenuous excuses for others.[5] Sieverding's failure to provide a valid reason for her delay in seeking to amend her complaint is compounded by the fact that her

---

[4] Sieverding does not attempt to offer a reason for her delay in bringing her proposed Claim 1, which is based on a newspaper article published in 2006.
[5] For example, the Supreme Court decided Thompson in April 2022, before Sieverding initiated this action or filed her first amended complaint.

proposed claims are simply a continuation of her decades-long effort to litigate arrests and detentions that occurred between 2005 and 2007 and to challenge the government's records relating to those arrests and detentions.

Sieverding has not justified her failure to bring her motion to amend in a timely fashion. Therefore, the court denies Sieverding's motion.


D.      Futility

Even if Sieverding had timely moved to amend her complaint, the court would deny the motion because the amendment would be futile. A motion to amend is futile if the amended complaint would "still fail[ ] to state a claim." Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009). Each of Sieverding's four claims in the Proposed Complaint 3.1 fails to provide a basis for relief.

Sieverding's first claim seeks to hold the DOJ liable for a purported violation of 28 C.F.R. § 50.2, which provides guidelines for the DOJ concerning its release of information regarding court cases to the media. As Sieverding concedes, there is no private right of action under that regulation. E.g., Harris v. Holder, 885 F. Supp. 2d 390, 401 (D.D.C. 2012). Although she requests that the court "create a remedy" for a violation of § 50.2, the court does not have the power to do so. Id. (holding with regard to § 50.2 that "[a]bsent a clear indication of congressional intent to create a private right of action for the enforcement of this regulation, the Court cannot impose one" (cleaned up)).

Sieverding's second proposed claim alleges malicious prosecution based on her arrests and detentions from 2005 through 2007. For the reasons explained in the court's order granting in part the defendants' motion to dismiss, this claim is barred by the doctrine of res judicata.

Sieverding, 2023 WL 4627650, at *3-5. Sieverding's belief that the Supreme Court's holding in

Thompson has any bearing on her claim or changes the applicability of that doctrine is

misplaced.[6]

Sieverding's third claim alleges a violation of 5 U.S.C. § 552a(e)(4), which sets forth

requirements that a federal agency must follow in maintaining a system of records about an

individual. Her claim, however, simply challenges the outcome of one of her prior cases.

Specifically, as Sieverding acknowledges, she brought a § 552a(e)(4) claim against the DOJ in a

prior lawsuit, which the presiding court dismissed on the merits. Doc. no. 99-1, ¶¶ 98 – 108; see

Sieverding v. U.S. Dep't of Just., 847 F. Supp. 2d 75, 84 (D.D.C. 2012), aff'd, No. 13-5060,

2013 WL 6801184 (D.C. Cir. Dec. 11, 2013). Sieverding challenges that court's decision based

on her new theory that the DOJ should have been judicially estopped from making its argument

in that case, on which the court relied in dismissing her claim. Doc. no. 99-1, ¶¶ 111 – 114. By

her own admission, therefore, Sieverding brought her § 552a(e)(4) claim against the DOJ in a

prior case and the district court issued a final judgment on the merits. As a result, her claim is

barred by the doctrine of res judicata.[7] In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st

Cir. 2003).

Sieverding's fourth and final proposed claim alleges a violation of 5 U.S.C. §

552a(e)(10), which requires government agencies to "establish appropriate administrative,

technical, and physical safeguards to insure the security and confidentiality of records and to

---

[6] Thompson, which Sieverding cited several times in her previous filings in this case, see
doc. nos. 30, 33, & 75, holds that a plaintiff suing for malicious prosecution need not show that
she was affirmatively exonerated of committing the alleged crime. That issue is not relevant to
the disposition of Sieverding's malicious prosecution claim in this case.

[7] Even if this claim were not barred by res judicata, Sieverding's allegations would fail to
state a viable claim for relief.

protect against any anticipated threats or hazards to their security or integrity which could result

in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom

information is maintained." Sieverding alleges that "the DOJ did not have an appropriate internal

controls system in place before her illegal arrests and still does not." Doc. no. 99-1, ¶ 187. Claim

4 refers to a record the DOJ purportedly created in response to Sieverding's complaints about her

arrests and detentions. In the record, the author references "reviewing the investigative case file

regarding the allegation" and concludes that there is insufficient evidence of DOJ misconduct.

Id., ¶ 116. Viewed generously, Claim 4 in the Proposed Complaint 3.1 alleges that the DOJ did

not have adequate internal policies or procedures pertaining to investigations when it

investigated her claim.

Sieverding does not allege a plausible claim for violation of § 552a(e)(10). That section

of the Privacy Act requires the DOJ to "safeguard its Privacy Act-protected records" to avoid

their unauthorized disclosure. Doe v. U.S. Dep't of Just., 660 F. Supp. 2d 31, 43 (D.D.C. 2009);

see also F.A.A. v. Cooper, 566 U.S. 284, 295 (2012). Sieverding's complaint contains no

allegations that the DOJ failed to keep any records confidential, nor does the complaint "identify

a rule or safeguard that [the] DOJ should have established but did not," which is necessary to

allege a violation of § 552a(e)(10). Dick v. Holder, 67 F. Supp. 3d 167, 186 (D.D.C. 2014)

(cleaned up); see also Doe, 660 F. Supp. 2d. at 43 (noting that the DOJ has "promulgated

extensive regulations codified at 28 C.F.R. §§ 16.1 et seq. that safeguard its Privacy Act-

protected records" (quotation omitted)). Moreover, to allege a violation of § 552a(e)(10),

Sieverding "must allege that the Department's failure to comply had an adverse effect on" her.

Lugo v. U.S. Dep't of Just., 214 F. Supp. 3d 32, 41 (D.D.C. 2016) (quotation and alteration

omitted), aff'd sub nom. Lugo v. United States Dep't of Just. for E. Dist. of New York, No. 16-

5297, 2018 WL 1896491 (D.C. Cir. Apr. 3, 2018). Even if Sieverding had alleged that the DOJ

failed to keep its records confidential, her claimed injuries, which amount to her being unable to

comply with deadlines in prior cases, see doc. no. 99-1, ¶ 188, "have nothing to do with the

DOJ's security practices," Lugo, 214 F. Supp. 3d at 41 ("Indeed, Lugo has not alleged any facts

pertaining to those security practices at all – and it is difficult to imagine how he might.").

      In sum, the Proposed Complaint 3.1 does not allege any plausible claims. Therefore, the

court denies Sieverding's motion for leave to amend on the additional ground that amendment

would be futile.


## II.   Summary Judgment Motion

      Because Sieverding's motion to amend is denied, the only claim remaining is Claim 2 of

the operative complaint (doc. no. 4). It alleges that the DOJ violated FOIA when it withheld

seven pages in response to one of Sieverding's requests for information. The defendants move

for summary judgment arguing that the DOJ appropriately withheld the pages under various

FOIA exemptions. Sieverding objects.


### A.   Background

      On September 9, 2013, Sieverding submitted a FOIA request to the DOJ, seeking

Executive Office of United States Attorneys ("EOUSA") records about herself. In 2016, the DOJ

released to Sieverding seven pages in full and 23 pages in part. It withheld 435 pages of

responsive documents.

Sieverding filed an administrative appeal of the DOJ's decision to withhold the relevant pages. In response, the Office of Information Policy ("OIP") remanded the 435 withheld pages to the DOJ's FOIA/Privacy Act staff for further review.

In October 2018, Sieverding filed another FOIA request for records relating to the 435 withheld pages. Her 2018 request was consolidated with the remand of her 2013 request. In January 2021, after determining that two of the 435 pages were duplicates, the FOIA/Privacy Act staff released to Sieverding 204 pages in full and 222 pages in part. It withheld seven pages of responsive documents.

Sieverding again administratively appealed the DOJ's response. In April 2022, the OIP remanded the responsive pages to the FOIA/Privacy Act staff for further review. The OIP's memorandum directed the staff to review certain redactions the DOJ had made to the 222 pages, including the names and email addresses of two Assistant U.S. Attorneys from the Eastern District of Virginia.

Theodore Smith, an Attorney-Advisor for EOUSA, reviewed all 433 non-duplicative pages that were responsive to Sieverding's request. In September 2022, following his review, the FOIA/Privacy Act staff released 407 pages in full and 19 pages in part to Sieverding. The redactions to the 19 pages consisted of names and email addresses of third parties other than the two AUSAs whose names the staff had previously redacted. The staff continued to withhold seven pages in full.

Sieverding filed her amended complaint in this case on July 21, 2022, nearly two months before the DOJ released the additional pages as the result of Smith's review. The defendants assert that Claim 2 is now moot as a result of that review and release. However, Sieverding requests in Claim 2 "that the Court enjoin the DOJ from withholding the seven pages withheld"

in response to her FOIA requests. Doc. no. 4, ¶ 20. Because the DOJ continues to withhold the seven pages even after Smith's review and release, Claim 2 is not moot.


B.      Discussion

"FOIA cases are typically decided on motions for summary judgment." Am. C.L. Union of Mass., Inc. v. U.S. Immigr. & Customs Enf't, 448 F. Supp. 3d 27, 35 (D. Mass. 2020) (citation and quotation omitted). Summary judgment is warranted for a defendant in a FOIA case "when the agency proves that it has fully discharged its obligations under the FOIA after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Crooker v. Tax Div. of U.S. Dep't of Just., No. 94-30129 MAP, 1995 WL 783236, at *7 (D. Mass. Nov. 17, 1995) (citation and quotation omitted). An agency discharges its burden when it "proves that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." Gillin v. IRS, 980 F.2d 819, 821 (1st Cir. 1992) (alteration in original) (citations omitted).

The defendants describe the seven withheld pages as follows:

- Pages 1-4 comprise "an AUSA's script-like printed notes for the direct examination of a USMA FOIA specialist witness in" Sieverding's 2011 civil FOIA lawsuit against the USMS in the Eastern District of Virginia. Doc. no. 77-2, ¶ 11.

- Page 5 comprises "a partially completed USMS form used to log the receipt of, assignment of, and action contemplated of the FOIA and Privacy Act request Plaintiff submitted to the USMS." Id., ¶ 12.

- Pages 6-7 "comprise a thread of five emails between two AUSAs from different districts comparing cases brought against them by Plaintiff and weighing the disadvantages of attaching a large file to a contemplated email." Id., ¶ 13.

The court reviewed in camera the seven pages that the DOJ withheld and finds the defendants' description of the documents accurate.

The defendants assert that these seven pages fall under three exemptions: 5 U.S.C. §§ 552(b)(5), b(6), and b(7)(C).[8] Specifically, the government argues that pages 1-4 fall under Exemption 5 and pages 5-7 fall under Exemptions 5, 6, and 7(C). The "government bears the burden of demonstrating the applicability of [the] claimed exemption[s]." Church of Scientology Int'l v. U.S. Dep't of Justice, 30 F.3d 224, 228 (1st Cir. 1994).

1.    Exemption 5

"Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency." N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132, 148 (1975); see also § 552(b)(5) (exempting from production "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency"). In other words, Exemption 5 "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context." Id. The "list [of privileges] includes the deliberative process privilege, attorney-client privilege, and attorney work-product privilege." United States Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 267 (2021).

---

[8] Courts and the defendants commonly refer to the exemptions found in §§ 552(b)(5), b(6), and b(7)(C) as "Exemption 5," "Exemption 6," and "Exemption 7(C)," respectively.

     a.     <u>Pages 1-4</u>

The defendants argue that pages 1-4, an AUSA's notes for witness examination during a civil litigation, are exempt from disclosure because they are protected by the attorney work-product privilege. The court agrees. The attorney work-product "privilege protects work done by an attorney in anticipation of, or during, litigation from disclosure to the opposing party." <u>Maine v. U.S. Dep't of Interior</u>, 298 F.3d 60, 66 (1st Cir. 2002). Notes that a government attorney prepares for use in witness examination during litigation are quintessential attorney work-product material and, as such, protected from disclosure under Exemption 5. <u>See</u>, <u>e.g.</u>, <u>Dobyns v. United States</u>, 123 Fed. Cl. 481, 495 (2015) (noting that "documents created by counsel for the parties in which the lawyers discussed, for example, how to cross examine a witness or how to respond to a judge would be classic work product–documents prepared for trial and disclosing the 'mental impressions, conclusions, opinions or legal theories' of counsel" (quoting Fed. R. Civ. P. 26(b)(3)(B))).

     b.     <u>Pages 5 and 6-7</u>

The defendants contend that the documentations on pages 5-7 fall under the deliberative process privilege.[9] The "deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." <u>Sierra Club</u>, 592 U.S. at 267 (quotation omitted). "The privilege is rooted in the obvious realization that officials will not

---

[9] The defendants also argue that pages 1-4 fall within the deliberative process privilege. Because the court determines that the DOJ properly withheld those pages under Exemption 5, the attorney work-product privilege, it does not address whether the deliberative process privilege also applies to those pages.

communicate candidly among themselves if each remark is a potential item of discovery and front page news." Id. (quotation omitted). "To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure." Id. To claim the deliberative process privilege pursuant to Exemption 5, "[t]he government carries the burden of establishing the applicability of the exemption and must show: (1) that the withheld material is an inter- or intra- agency memorandum . . . (2) that the document is deliberative; and (3) that it is predecisional." Stalcup v. C.I.A., 768 F.3d 65, 69 (1st Cir. 2014).

The DOJ properly withheld pages 5-7 under the deliberative process privilege. Those documents reflect internal government communications considering appropriate responses to Sieverding's requests. Therefore, they are protected from disclosure.

Because the DOJ properly withheld all seven responsive pages under Exemption 5, the defendants are entitled to summary judgment on Claim 2. For completeness, however, the court addresses the defendants' argument that Exemptions 6 and 7(C) protect certain pages from disclosure.

2.    Exemptions 6 and 7(C)

Exemption 6 provides that agencies need not produce in response to FOIA requests "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Exemption 7(C) permits the government to withhold information "compiled for law enforcement purposes" when the release of that information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." "As Exemption 7(C) protects similar interests and shields a broader range of information," a court "need not address Exemption 6 separately because 'all information that would fall within the

scope of Exemption 6 would also be immune from disclosure under Exemption 7(C).'" Moffat v. U.S. Dep't of Just., 716 F.3d 244, 250 (1st Cir. 2013) (quoting Roth v. U.S. Dep't of Justice, 642 F.3d 1161, 1173 (D.C. Cir. 2011)).

Exemption 7(C) requires a court to balance an individual's privacy interests against the public interest in disclosure. Moffat, 716 F.3d at 251 (1st Cir. 2013). "This public interest must be guided by FOIA's basic purpose, which is 'to open agency action to the light of public scrutiny.'" Id. (quoting U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press, 489 U.S. 749, 772 (1989)). "This purpose is not 'fostered by disclosure of information about private citizens that is accumulated in various government files but that reveals little or nothing about an agency's own conduct.'" Id. (quoting Reps. Comm., 489 U.S. at 772).

Pages 5, 6, and 7 contain the names, email addresses, or both of government employees involved in responding to Sieverding's requests. Sieverding has not shown, or attempted to show, that there is any public interest in the disclosure of this information. See Moffat, 716 F.3d at 252 (noting that the "public interest FOIA seeks to uphold is the right of citizens to understand and obtain information about the workings of their own government" rather than merely a "personal stake in th[e] information"). Therefore, the DOJ properly withheld pages 5-7 under Exemption 7(C). The defendants are entitled to summary judgment on Claim 2 as to those pages for that additional reason.

<u>Conclusion</u>

For the foregoing reasons, the court construes document no. 100 as an addendum to Sieverding's motion to amend her complaint. The court denies that motion (doc. no. 92), grants

the defendants' motion for summary judgment (doc. no. 77), and denies any other pending

motions as moot. The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Samantha D. Elliott
United States District Judge

June 11, 2024

cc:   Kay Sieverding, I, pro se
       Counsel of Record